## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BRIDGET OAKES *et al.*, | |
| *Plaintiffs*, | |
| v. | No. 1:20-cv-02754-DLF |
| THURGOOD MARSHALL ACADEMY PUBLIC CHARTER HIGH SCHOOL *et al.*, | |
| *Defendants.* | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Bridget Oakes brings this case under the Individuals with Disabilities Education Improvement Act (IDEA), 20 U.S.C. §§ 1400 *et seq.*, challenging Thurgood Marshall Academy Public Charter High School's (TMA) failure to provide her son, T.O., a free appropriate public education (FAPE). *See generally* Compl., Dkt. 1. In addition, Oakes alleges discrimination and retaliation based on his disability, in violation of the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, the Americans with Disabilities Act (ADA), 42 U.S.C § 12101 *et seq.*, and the Fourteenth Amendment. *See id.* ¶¶ 1–2. Before the Court is Defendant's Partial Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See* Def.'s Partial Mot. to Dismiss, Dkt. 9. For the reasons that follow, the Court will grant the motion in part and deny it in part.

1

# I.   BACKGROUND

## A.  Factual Background[1]

T.O. is a sixteen-year-old disabled student who attended TMA for the 2018–19 and 2019–20 school years.  Compl. ¶¶ 49–50, 72.  During that time, T.O. had an individualized education program (IEP) for emotional disturbance under the IDEA.  *Id.* ¶ 74.  T.O.'s disabilities include "Migraine without aura, Chronic tension-type headache, intractable, Generalized Abdominal Pain, Subacute frontal sinusitis, Constipation, Emotional Depression, anxiety, Oppositional Defiant Disorder ("ODD") and possible Obsessive-Compulsive Disorder (OCD)." *Id.* ¶ 72.  T.O. experiences "psychosomatic symptoms," which "can be easily triggered in his environment as a result of his diagnosis of unspecified depressive disorder as well as his history of traumatic experiences in his early childhood."  *Id.* ¶¶ 72–73.  T.O.'s "debilitating and disabling migraines impacted his ability to consistently attend school during the third and fourth quarters of the 2018–19 school year," and his absence continued into the 2019–20 school year, during which he missed every day of school.  *Id.* ¶¶ 77–78.  T.O. also failed the majority of his classes during the third and fourth quarters of the 2018–19 school year.  *Id.* ¶ 51.

Before March 2019, Oakes "provided Defendants with medical documentation describing and identifying T.O.'s debilitating disabilities and how his disabilities negatively impact his ability to attend school."  *Id.* ¶ 79.  She claims that, although TMA "knew of T.O.'s debilitating and disabling conditions prior to March 2019[,] [they] did not revise his IEP to provide additional supports and accommodations to allow him to consistently attend school." *Id.* ¶ 80. Nor did they "offer or provide any general education, accommodations, special education and/or

---

[1] On a Rule 12(b)(6) motion, the Court assumes the truth of material factual allegations in the complaint.  *See Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011).

related services." *Id.* ¶ 81.  Because TMA "had the staff to provide [those] services during the 2018–19 and 2019–20" school years, Oakes concludes that their refusal to provide them was the result of "bad faith" or "gross misjudgments" by TMA.  *Id.* ¶ 82.

The complaint further alleges that although TMA knew that T.O. failed to meet several of his 2017–18 IEP goals, the school did not revise his September 2018–19 IEP, and thus it suffered from the same defects as the earlier IEP.  *Id.* ¶¶ 84, 90, 114.  Consequently, T.O. failed to meet his reading, math, written expression, and social goals in the 2018–19 school year.  *Id.* ¶¶ 91–94.  Despite T.O.'s repeated struggles, the school failed to address the deficiencies of his IEP again in September 2019.  *Id*. ¶¶ 95–108, 115.  In addition, TMA did not provide T.O. any instruction to help him meet his September 2018 transition goals.  *Id.* ¶ 123.  From March 2019 through September 2019, T.O. did not receive the specialized instruction to which he was entitled and, as a result, "regressed significantly."  *Id*. ¶¶ 116–18, 153.  His grades dropped significantly, and his behavioral and social functions also suffered.  *Id.* at ¶¶ 154, 159, 200.

TMA also allegedly failed to provide Oakes with the services to which she was entitled as a parent at the school.  For example, TMA did not respect her "rights to request . . . services, accommodations, . . . and special education for T.O." throughout the 2018–19 and 2019–20 school years.  *Id.* ¶ 133.  Despite her "beg[ging] . . . for help . . . the Defendants refused to provide any special education and related services to T.O."  *Id*. ¶ 138.  TMA also "denied [her] the right to meaningfully participate in T.O.'s education and failed to offer or provide Parent information and training," such as informing her of her rights to request homebound instruction, new evaluations, and functional behavioral assessments.  *Id.* ¶¶ 160–62, 164.  TMA did not provide Oakes with progress reports, which "impeded [her] ability to be informed and

understand [T.O.'s] rights to special education and related services." *Id.* ¶ 168.  At the time, TMA knew Oakes was disabled and in need of training and assistance. *Id.* at ¶¶ 172–73, 177.

Despite "noticing T.O. was not attending school during the 2018–19 and 2019–20 school years," TMA allegedly "failed to conduct a functional behavioral assessment and create a behavioral intervention plan." *Id.* ¶ 140.  On May 7, 2019, the school referred T.O. to the Superior Court and Office of the D.C. Attorney General for truancy charges. *Id.* ¶ 183.  TMA's policy states that "[t]ruancy is the willful absence from school by a minor (5–18 years of age) with or without parental approval, knowledge, or consent" and "without a valid reason." *Id.* ¶ 184.  TMA "referred T.O. for truancy charges after receiving information and documentation that T.O. was missing school due to medical and mental health issues," which the school's witnesses at the due process hearing acknowledged. *Id.* at ¶¶ 186, 188.  Even after making that acknowledgement, TMA has maintained the truancy charges against T.O. *Id.* ¶ 189.

## B.  Procedural History

On December 18, 2019, Oakes filed a Due Process Complaint against TMA alleging T.O. had been denied a FAPE in violation of the IDEA due to the lack of appropriate IEPs and failure to implement his IEP.  Compl. Ex. A (Hearing Officer Determination) at 1, Dkt 1-2.  The parties had a resolution meeting on January 31, 2020, but did not resolve their dispute. *Id.* at 2.  A due process hearing was held via videoconference on June 12, 15–16, and 18. *Id.*  The parties contested seven issues at this hearing. *Id.* at 3–4.  The first four issues were claims under the IDEA. *Id.* at 3.  The remaining were a claim under Section 504 of the Rehabilitation Act, a claim under Title II of the ADA, and a claim of common-law fraud. *Id.* at 4.  On June 30, the Hearing Officer ruled in favor of T.O., in part, on three of the four IDEA claims and dismissed the non-IDEA claims for lack of subject-matter jurisdiction. *Id.* at 22, 26, 29, 31–32.

On September 27, 2020, Oakes filed the present action.  Her complaint asserts six claims for relief.  In Count I, she appeals the hearing officer's decision denying her son extended school year services and independent educational evaluations under the IDEA.  Compl. ¶¶ 220–38. Count II alleges that the TMA's denial of a FAPE constituted discrimination under Section 504 of the Rehabilitation Act.  *Id.* ¶¶ 239–50.  Count III alleges that the TMA's May 7, 2019, truancy referral constituted discriminatory retaliation in violation of the Rehabilitation Act.  *Id.* ¶¶ 251– 63.  Count IV alleges that TMA's denial of a FAPE and exclusion of T.O. from the marching band constituted discrimination under Title II of the ADA.  *Id*. ¶¶ 264–78.  Count V alleges a denial of equal protection pursuant to 42 U.S.C § 1983 and the Fourteenth Amendment.  *Id*. ¶¶ 279–[83].[2]  Count VI requests attorneys' fees as a prevailing party in the due process hearing. *Id.* ¶¶ [284]–[91].

On March 9, 2021, the Court consolidated this case with *Thurgood Marshall Academy Public Charter High School v. Bridget Oakes*, 20-cv-2755-DLF.  *See* Minute Order of March 9, 2021.  In that case, TMA appealed the portions of the hearing officer's decision that were adverse to it.  *See generally* Counterclaim, Dkt. 15.  Before the Court is TMA's Partial Motion to Dismiss Counts I through V of the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). *See generally* Def.'s Mot. to Dismiss.  This motion is now ripe for resolution.

## II.    LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss the complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, a complaint must contain factual matter

---

[2] Paragraph 282 of the Complaint is followed by a second paragraph numbered "231."  To reduce confusion, the Court will refer to all paragraphs after paragraph 282 as they should have been numbered.

sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 570 (2007).  A facially plausible claim is one that "allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009).  This standard does not amount to a specific probability requirement,

but it does require "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see*

*Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above

the speculative level.").  A complaint need not contain "detailed factual allegations," but alleging

facts that are "merely consistent with a defendant's liability . . . stops short of the line between

possibility and plausibility." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

Well-pleaded factual allegations are "entitled to [an] assumption of truth," *id.* at 679, and

the court construes the complaint "in favor of the plaintiff, who must be granted the benefit of all

inferences that can be derived from the facts alleged," *Hettinga v. United States*, 677 F.3d 471,

476 (D.C. Cir. 2012) (internal quotation marks omitted).  The assumption of truth does not apply,

however, to a "legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal

quotation marks omitted).  "Threadbare recitals of the elements of a cause of action, supported

by mere conclusory statements, do not suffice." *Id.*  Ultimately, "[d]etermining whether a

complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing

court to draw on its judicial experience and common sense." *Id.* at 679.

## III.    ANALYSIS

TMA moves to dismiss part of Count I and all of Counts II–V on exhaustion grounds and

Counts II–V for failure to state a claim under Rule 12(b)(6).  *See* Mem. of P. & A. in Supp. of

Def.'s Partial Mot. to Dismiss at 2, Dkt. 9.  Although TMA has not proven that Oakes did not

properly exhaust her administrative remedies in Count I, the Court will grant TMA's motion in

part and dismiss Counts II-V because she has failed to state a claim for relief under the

Rehabilitation Act, the ADA, or the Fourteenth Amendment (under § 1983).[3]

### A.  Exhaustion of Administrative Remedies

"Judicial review is generally unavailable under the IDEA unless all administrative

procedures have been exhausted."  *Douglass v. District of Columbia*, 605 F. Supp. 2d 156, 165

(D.D.C. 2009) (citing *Honig v. Doe,* 484 U.S. 305, 326–27 (1988)).  "Although exhaustion . . . is

not required 'where exhaustion would be futile or inadequate,' [Oakes] bears the burden of

demonstrating the futility or inadequacy of the administrative process."  *Douglass*, 605 F. Supp.

2d at 165 (quoting *Honig*, 484 U.S. at 326–27).  Absent such a showing, a plaintiff "must pursue

all administrative avenues of redress under the [IDEA] before seeking judicial review."  *Id.*

(quoting *Cox v. Jenkins,* 878 F.2d 414, 419 (D.C. Cir. 1989)).  "Significantly, the IDEA's

exhaustion requirement applies not only to claims brought directly under the IDEA itself, but to

any claims for relief available under the IDEA, regardless of the statutory basis for such claims."

*Id.*  But first the Court must consider whether IDEA exhaustion is jurisdictional.  *See Steel Co. v.

Citizens for a Better Env't*, 523 U.S. 83, 93–102 (1998) (requiring federal courts to first conclude

they have jurisdiction before resolving the merits of a case).

#### 1.  IDEA exhaustion is not jurisdictional

When an exhaustion requirement is jurisdictional, the plaintiff has "the initial burden of

pleading administrative exhaustion in his or her complaint."  *T.H. v. District of Columbia*, 255 F.

Supp. 3d 55, 58–59 (D.D.C. 2017); *see Spinelli v. Goss*, 446 F.3d 159, 162 (D.C. Cir. 2006)

(quoting 29 U.S.C. § 794a(a)(1)) (holding that a federal employee's claim under the

---

[3] TMA also argues that Counts II-V should be dismissed as untimely, *see* Def.'s Mem. at 2, but because she has failed to state a claim in these counts, *see infra* section III.B, the Court need not address this argument.

Rehabilitation Act is subject to jurisdictional exhaustion because "[t]he Act limits judicial review to employees 'aggrieved by the final disposition' of their administrative 'complaint'"); *see also Doak v. Johnson*, 798 F.3d 1096, 1103–04 (D.C. Cir. 2015).  If, on the other hand, the exhaustion requirement is a claims-processing rule, then "the failure to pursue the required administrative remedies would be an affirmative defense, which the defendant would have the burden of pleading and proving."  *T.H.*, 255 F. Supp. 3d at 59 (citation omitted); *see, e.g.*, *Artis v. Bernanke*, 630 F.3d 1031, 1034 n.4 (D.C. Cir. 2011) (holding that Title VII claims are subject to a non-jurisdictional exhaustion requirement); *Koch v. Walter*, 934 F. Supp. 2d 261, 266 (D.D.C. 2013) (same for ADEA claims).  There is a presumption that "exhaustion is non-jurisdictional unless 'Congress states in clear, unequivocal terms that the judiciary is barred from hearing an action until the administrative agency has come to a decision.'"  *Avocados Plus Inc. v. Veneman*, 370 F.3d 1243, 1248 (D.C. Cir. 2004) (quoting *I.A.M. Nat'l Pension Fund Benefit Plan C v. Stockton Tri Indus.*, 727 F.2d 1204, 1208 (D.C. Cir. 1984)); *see also Boechler P.C. v. Commissioner*, 142 S. Ct. 1493, No. 20-1472, slip op. at 3 (Apr. 21, 2022) (reiterating that "a procedural requirement" is "jurisdictional only if Congress 'clearly states' that it is" (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515 (2006))); *T.H.*, 255 F. Supp. 3d at 59 (explaining that "the Supreme Court 'has adopted a readily administrable bright line for determining whether to classify a statutory limitation as jurisdictional'" (quoting *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013) (internal quotation marks and citation omitted)).

Although the D.C. Circuit has yet to reach the issue, several circuits have held that the IDEA's exhaustion requirement is not jurisdictional.  *See Payne v. Peninsula Sch. Dist.*, 653 F.3d 863, 867–71 (9th Cir. 2011) (en banc), *overruled on other grounds by Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014) (en banc); *see also Mosely v. Bd. of Educ.,* 434 F.3d 527, 533 (7th Cir.

2006); *N.B. ex rel. D.G. v. Alachua Cnty. Sch. Bd.,* 84 F.3d 1376, 1379 (11th Cir. 1996) (per curiam).  In this district, however, there is a split of authority.  *Compare Brown v. District of Columbia*, 324 F. Supp. 3d 154, 163–64 (D.D.C. 2018) (no), and *T.H.*, 255 F. Supp. at 58–59 (no), *with Douglas v. District of Columbia*, 65 F. Supp. 3d 225, 228 (D.D.C. 2014) (yes), and *Douglass v. District of Columbia*, 750 F. Supp. 2d 54, 60 (D.D.C. 2010) (yes).  The Court addresses this issue first.

Considering the factors that the Supreme Court has identified in assessing whether a statutory exhaustion requirement is jurisdictional, *see Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 163–66 (2010), this Court agrees with those courts that have held that the IDEA's exhaustion requirement is not jurisdictional, *see, e.g., Payne*, 653 F.3d at 868–69.  In relevant part, the IDEA provides:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(*l*).  Applying the relevant factors, first, there is no mention of jurisdiction in 20 U.S.C. § 1415(*l*).  *See Payne*, 653 F.3d at 869 ("[N]either the word "courts" nor the word "jurisdic[]tion" appears in § 1415(*l* ).").  This provision "is written as a restriction on the rights of plaintiffs to bring suit, rather than as a limitation on the power of the federal courts to hear the suit."  *Id.*  Second, the IDEA's exhaustion requirement is "not located in a jurisdiction-granting provision," *T.H.*, 255 F. Supp. 3d at 59 (quoting *Payne*, 653 F.3d at 870–71)  Instead, the IDEA's jurisdictional provision is located in § 1415(i)(3)(A)—which provides that "[t]he district courts of the United States shall have jurisdiction of actions brought under this section without regard to the amount in controversy," and it makes no mention of exhaustion or any other

restriction on the "court's power to hear a case." *Arbaugh*, 546 U.S. at 514 (internal quotation marks and citation omitted). Third, there are no other factors suggesting that the IDEA's exhaustion requirement is jurisdictional. *See Payne*, 653 F.3d at 870. In fact, the Supreme Court's recognition that the IDEA does not require exhaustion "where exhaustion would be futile or inadequate," *Cox*, 878 F.2d at 418 (quoting *Honig*, 484 U.S. at 327), strongly indicates that the requirement is a "flexible" claims-processing rule and not a jurisdictional one, *Payne*, 653 F.3d at 870. Altogether, all three factors point toward IDEA exhaustion not being jurisdictional. *See id.* at 870–71. TMA thus "carries the burden of pleading and proving plaintiff['s] failure to exhaust" and "must show—on the face of the complaint—that plaintiff[] failed to exhaust IDEA's administrative remedies." *T.H.*, 255 F. Supp. 3d at 60.

> 2. *Count I*

The hearing officer's decision suggests that Oakes properly exhausted her claims under Count I for extended school year services and independent educational evaluations. *See* Compl. ¶¶ 222, 229–37. After she raised the issue of extended school year services, the hearing officer concluded that T.O was not eligible for those services in 2019. *See* Compl. Ex. A, at 3–4, 24–25. The hearing officer reached this conclusion even though he did not include express language about extended school year services (or independent educational evaluations, for that matter) in the list of issues that would be addressed at the due process hearing, and Oakes failed to correct the omission. *See* Compl. Ex. A, at 3–4. But that kind of granularity is unnecessary for IDEA exhaustion. *See Thomas v. District of Columbia*, 773 F. Supp. 2d 15, 18–19 (D.D.C. 2011) (not requiring plaintiff to list explicitly certain counts as "violations" so long as relevant facts were presented to hearing officer); *see also Q.C-C. v. District of Columbia*, 164 F. Supp. 3d 35, 46 (D.D.C. 2016) (construing request for "funding" of plaintiff's placement to be "inclusive of a

claim for reimbursement").  Moreover, TMA did not argue that Oakes had waived these issues by not certifying them for the administrative hearing until its reply brief, *see* Def.'s Reply at 1–2, Dkt. 14; Def.'s Mem. at 6–7 (arguing instead that the hearing officer did not decide the issues), and the Court need not address arguments raised for the first time in a reply brief, *see Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1001 (D.C. Cir. 2008) (considering arguments raised for the first time in a reply brief to be forfeited).  The fact that Oakes raised the issue, and the hearing officer resolved the issue, Compl. Ex. A at 3, 24–25, shows that TMA has not met its burden of establishing that she did not "pursue all administrative avenues of redress under the [IDEA] before seeking judicial review," *Cox*, 878 F.2d at 419.

For the same reasons, TMA has not proven that Oakes did not exhaust her claim for independent educational evaluations.  *See* Compl. ¶¶ 145–52.  Recounting the relief that Oakes requested, the hearing officer stated, "[TMA] shall pay for a full battery of assessments by private Independent Educational Evaluation ("IEE") evaluators selected by [Oakes]."  Compl. Ex. A, at 4.  And in the factual background, he explained that Oakes originally asked TMA for IEEs on November 11, 2019, because she did not agree with some of her son's evaluations.  *Id.* at 18; *see also id.* at 4 (requesting payment "for the participation and travel expenses of all of the IEE evaluators").  Although the hearing officer did not discuss Oakes's requests for payments related to the IEE evaluators or mention them in the pretrial order, *see* Def.'s Reply at 1–3, he recognized the IEEs as relief sought and mentioned them in his discussion of T.O.'s evaluations before "conclud[ing] that there was no violation of the IDEA due to failure to conduct further assessments of" T.O.   Compl. Ex. A, at 31.

Because Oakes raised both issues in the due process hearing, the administrative process was able to run its course and the agency was able to provide its considered expertise on this

issue.  *See DL v. District of Columbia*, 450 F. Supp. 2d 11, 16 (D.D.C. 2006) (explaining that

exhaustion "functions primarily to forestall the 'premature interruption of the administrative

process' by the courts" (quoting *McKart v. United States*, 395 U.S. 185, 193 (1969))).  As such,

TMA has not met its burden of proving that Oakes did not exhaust administrative remedies, and

this Court will deny defendant's motion to dismiss Count I.[4]

## B.  Failure to State a Claim

### 1.  Count II – Rehabilitation Act

Count II of Oakes's complaint alleges a claim under § 504 of the Rehabilitation Act.  "In

the context of cases involving children who receive benefits pursuant to the IDEA, courts have

consistently recognized that in order to establish a violation of § 504, 'something more than a

mere failure to provide the free appropriate education required by [the IDEA] must be shown.'"

*Lucas v. District of Columbia*, 683 F. Supp. 2d 16, 18–19 (D.D.C. 2010) (quoting *Lunceford v.

District of Columbia,* 745 F.2d 1577, 1580 (D.C. Cir. 1984)).  "Specifically, plaintiffs must show

either bad faith or gross misjudgment on the part of the governmental defendants."  *Id.* at 19

(quoting *D.R. ex rel. Robinson v. District of Columbia,* 535 F. Supp. 2d 38, 42 (D.D.C. 2008)).

"[L]iability [under § 504] may be imposed only when the decision by the professional is such a

substantial departure from accepted professional judgment, practice or standards as to

demonstrate that the person responsible actually did not base the decision on such

judgment."  *Torrence v. District of Columbia*, 669 F. Supp. 2d 68, 71 (D.D.C. 2009) (quoting

*Monahan v. Nebraska*, 687 F.2d 1164, 1171 (8th Cir. 1982)).  This "require[s] . . . something

more than an incorrect evaluation, or a substantively faulty individualized education plan, in

order for liability to exist."  *Id.* (quoting *Monahan,* 687 F.2d at 1170.).  This is because "§ 504 is

---

[4] The Court expresses no opinion on whether Oakes exhausted her remaining claims.

attuned to programmatic failures while the IDEA is focused on the individual student who needs special education." *Id.* at 72.

Although Oakes alleges that TMA acted in bad faith and with gross misjudgment "by excluding and denying him the benefits of a program solely on the basis of his disability" "during the 2018–19 and 2019–20 school years," Compl. ¶ 242, her factual allegations do not rise to the level of bad faith or gross misjudgment, *see* Compl. ¶¶ 243–49. They "do not show anything other than a possible denial of [a] FAPE under the IDEA." *Lucas*, 683 F. Supp. 2d at 19 (quoting *Torrence,* 669 F.Supp.2d at 72); *see also Robinson,* 535 F. Supp. 2d at 42 (finding "allegations that defendants failed to provide D.R. with a FAPE, that defendants failed to provide appropriate special education services and evaluations, and that the hearing officer erred in his decision to dismiss plaintiffs' case in its entirety" not enough "to suggest . . . bad faith or gross misjudgment sufficient to support a Section 504 claim"). The complaint also does not contain any factual allegations that TMA's conduct constituted "a substantial departure from accepted professional judgment, practice or standards," presented "something more than an incorrect evaluation, or a substantively faulty individualized education plan," or the failure to implement that plan. *Torrence*, 669 F. Supp. 2d at 71 (quoting *Monahan*, 687 F.2d at 1170–71). Further, the "complaint is devoid of any facts from which the Court could infer . . . a policy, custom, or practice" of discrimination. *Lucas*, 683 F. Supp. 2d at 19. Accordingly, the Court will dismiss Count II of the complaint.

### 2.   *Count III – Rehabilitation Act*

Count III of Oakes's complaint alleges a claim for retaliation in violation of the Rehabilitation Act. To establish a prima facie case for a retaliation claim under the ADA, a plaintiff must satisfy three elements: (1) she must show that she "engaged in protected activity;"

(2) that she "was subjected to adverse action by" the defendant; and (3) that there was a causal connection "between the adverse action and the protected activity." *Alston v. District of Columbia*, 561 F. Supp. 2d 29, 40 (D.D.C. 2008) (quoting *Mayers v. Laborers' Health & Safety Fund of N. Am.*, 478 F.3d 364, 369 (D.C. Cir. 2007) (noting that "[t]he same test applies under the Rehabilitation Act" and Title VII (citation omitted)).

Oakes claims that TMA retaliated against her son by referring him for truancy charges, despite knowing that he missed school for "medical and mental health issues." Compl. ¶¶ 254, 257. She points to the filing of the due process complaint as the protected activity and to TMA's "filing and maintaining . . . truancy charges" as the adverse action. Pl.'s Mem. of P. & A. in Opp'n to Def.'s Mot. to Dismiss at 16, Dkt. 13. Filing a due process complaint is a protected activity under the Rehabilitation Act. *See Alston*, 561 F. Supp. 2d at 42–43. Additionally, the filing of truancy charges likely meets the definition of an adverse action. *See Mogenhan v. Napolitano*, 613 F.3d 1162, 1166 (D.C. Cir. 2010) (defining "adverse actions" as any action that "might have dissuaded a reasonable [person] from making or supporting a charge of discrimination" (internal quotation marks and citation omitted)). But because TMA filed the truancy charges on May 7, 2019, *before* December 18, 2019, when Oakes filed her due process complaint, the former could not be retaliation for the latter. *See* Compl. Ex. A, at 1, 15; *see also Shinabargar v. Bd. of Trustees of Univ. of D.C.*, 164 F. Supp. 3d 1, 18 (D.D.C. 2016) ("an inference of causation may be drawn only when 'the two events'—the protected events and the adverse actions—'are very close in time'" (quoting *Woodruff v. Peters*, 482 F.3d 521, 529 (D.C. Cir. 2007))). Because Oakes cannot demonstrate a causal connection between the protected action and the alleged retaliation, the Court will dismiss Count III.

### 3.  Count IV – ADA

Count IV alleges a claim for discrimination under the Americans with Disabilities Act. The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  "To show that the exclusion was 'by reason of' his or her disability, an individual must establish that the disability 'actually play[ed] a role in the . . . decision making process and [had] a determinative influence on the outcome.'"  *Alston v. District of Columbia*, 770 F. Supp. 2d 289, 297 (D.D.C. 2011) (quoting *Pinkerton v. Spellings,* 529 F.3d 513, 519 (5th Cir. 2008)).  This standard "requires more than the defendant's [m]ere awareness of a plaintiff's disability"—it requires the disability to be "a but-for cause."  *Id.* at 298 (quotations and citations omitted). "'[G]arden variety IDEA violations' . . . are not cognizable under the ADA."  *C.W. ex rel. Reid-Witt v. District of Columbia*, 486 F. Supp. 3d 1, 10 (D.D.C. 2020) (quoting *Holmes-Ramsey v. District of Columbia*, 747 F. Supp. 2d 32, 39 (D.D.C. 2010)); *see also Diaz–Fonseca v. Puerto Rico*, 451 F.3d 13, 19 (1st Cir. 2006) ("Where the essence of the claim is one stated under the IDEA for denial of [a] FAPE, no greater remedies than those authorized under the IDEA are made available by recasting the claim as one brought under . . . the ADA.").

Oakes alleges that TMA violated the ADA by excluding her son from school programs and services and by failing to provide him with appropriate "auxiliary aids."  Compl. ¶¶ 268–69. Specifically, she claims that TMA denied him "meaningful access to the Marching Band program and activities," *id.* ¶ 271, and excluded him from "participation in the programs and activities of the school," *id.* ¶ 272.  She also asserts that defendant acted "intentionally, or with deliberate indifference" in "fail[ing] to modify policies and procedures relating to children with

15

medical and mental health disabilities where such modifications are required to ensure equal access for the Plaintiff T.O. and other persons with disabilities." *Id.* ¶ 274.

These barebone allegations do not make clear how TMA denied T.O. of something more than a FAPE.  In any event, Oakes did not respond to TMA's argument that Count IV failed to state a cognizable claim to relief under the ADA.  *See* Def.'s Reply at 7; Pl.'s Opp'n at 15–16. Accordingly, "the Court may treat that argument as conceded."  *Singh v. District of Columbia*, 55 F. Supp. 3d 55, 66 (D.D.C. 2014); *see also Wannall v. Honeywell, Inc.*, 775 F.3d 425, 428 (D.C. Cir. 2014) ("[I]f a party files an opposition to a motion and therein addresses only some of the movant's arguments, the court may treat the unaddressed arguments as conceded.").  As such, the Court will dismiss Count IV of the Complaint.

### 4.  Count V – § 1983

Count V alleges a claim under 42 U.S.C. § 1983 and the Fourteenth Amendment's Equal Protection Clause.[5]  As in all "§ 1983 action[s] against a municipality such as the District of Columbia, the burden is on the plaintiff[] to establish that the municipality has a custom or practice that caused the alleged constitutional or statutory violation."  *Johnson v. District of Columbia*, 190 F. Supp. 2d 34, 47 (D.D.C. 2002) (citing *Monell v. Dep't of Soc. Servs. of the City of N.Y.,* 436 U.S. 658, 694 (1978)).  Although the Complaint alleges facts that might suggest TMA violated T.O.'s equal protection rights, the § 1983 count is a "[t]hreadbare recital[] of the elements of a cause of action, supported by mere conclusory statements," *Iqbal*, 556 U.S. at 678 ,

---

[5] The District of Columbia is not a state and is thus not subject to the Fourteenth Amendment's Equal Protection Clause but is instead governed by the equal protection component of the Fifth Amendment's Due Process Clause. *See, e.g.*, *Grissom v. District of Columbia*, 853 F. Supp. 2d 118, 126 (D.D.C. 2012) (citing *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954)).  Accordingly, the Court will construe this count as a claim under § 1983 and the Fifth Amendment.

without factual allegations as to the custom or practice requirement, *see* Compl. ¶¶ 279–[86];[6]

*see also Jackson*, 826 F. Supp. 2d 109, 122 (D.D.C. 2011) (finding insufficient allegations to

support a pattern or custom claim under § 1983 in IDEA case).[7]   Accordingly, the Court will

dismiss Count V of the Complaint.

## CONCLUSION

For the above reasons, this Court will deny defendant's motion to dismiss Count I of

Plaintiff's complaint for failure to exhaust administrative remedies and grant defendant's motion

to dismiss Counts II–V of Plaintiff's complaint for failure to state a claim.


DABNEY L. FRIEDRICH
United States District Judge

May 17, 2022

---

[6] Not only does Oakes fail to allege facts that show a custom or practice, she argues the opposite in her brief.  *See* Pl.'s Opp'n at 18 ("T.O. was treated *differently* from members of the protected class, his disabled peers, when it failed to provide him with IEP services." (emphasis added)).

[7] Because the Court concludes that there are insufficient allegations of a pattern or custom to survive a motion to dismiss, the Court need not address (1) whether TMA, as a private institution, is even subject to *Monell* liability under § 1983 or (2) whether Oakes has identified appropriate comparators.  *See* Def.'s Mem. at 15–16.